**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| PATRICIA A. SESSUMS, )<br>)<br>        Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social )<br>Security Administration, )<br>)<br>        Defendant. ) | Case No. CIV-06-380-RAW |

**REPORT AND RECOMMENDATION**

Plaintiff Patricia A. Sessums ("Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and the case is REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on August 8, 1957 and was 49 years old at the time of the ALJ's decision. Claimant completed her education through the seventh grade. Claimant has no past relevant work. Claimant alleges an inability to work beginning October 1, 1992, due to hypertension, asthma, seizure disorder and personality disorder.

### Procedural History

Claimant was previously found to be disabled as of October 1, 1992 based upon mental impairments and began receiving supplemental security income. On July 28, 2003, Defendant notified Claimant her

benefits were to be terminated, based upon an alleged improvement in her condition. Claimant did not file a timely appeal of the cessation of benefits, which would have been required by October 1, 2003.

On November 7, 2003, Claimant filed for Supplemental Security Income under Title XVI of the Social Security Act (42 U.S.C. § 1381, *et seq.*). Claimant's application for benefits was denied initially and upon reconsideration. A hearing before ALJ Michael J. Kirkpatrick was held on August 3, 2005 in Ada, Oklahoma. By decision dated January 23, 2006, the ALJ found that Claimant was not disabled at any time through the date of insurability. On June 14, 2006, the Appeals Council denied review of the ALJ's findings. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while certain of Claimant's medical conditions were severe, Claimant did not meet a listing and retained the residual functional capacity ("RFC") to perform a wide range of medium work, which requires no more than occasional stooping and limited to simple repetitive tasks that do not require interaction with the public.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to consider Claimant's application as a late appeal of the cessation of previously awarded benefits; (2) failing to discuss the psychiatric opinions prior to Claimant's application and explain the weight attributable to each; and (3) relying on one consultative examination for his findings while the remainder of the evidence supports a finding of disability.

**Timeliness of Claimant's Filing**

Claimant contends Defendant should have made a good cause determination as to whether Claimant should have been permitted to appeal the decision to cease her benefits out-of-time, given her mental and educational limitations. Claimant argues the failure to allow the appeal adversely affected her ability to defend her position since the burden lies with Defendant throughout the appeals process of a cessation determination as opposed to the burden-shifting that occurs in an original determination.

Claimant's mental treatment began in September of 1991. At that time, the treatment notes indicated Claimant felt someone was after her, she experienced visual hallucinations and memory black out spells. (Tr. 194, 199-200). She reported physical abuse, including sexual molestation by her father. (Tr. 202, 205, 209). She was diagnosed with complex partial seizures, depression, and a high probability of PTSD. (Tr. 201, 203). From April through November of 2002, Claimant underwent therapy sessions and received

5

medication for her conditions. (Tr. 222-223).

In December of 2002, Claimant underwent a consultative psychiatric evaluation by C. F. Mynatt, M.D. (Tr. 223-226). Dr. Mynatt found Claimant suffered from emotional problems precipitated by her abuse. She was depressed and with feelings of inadequacy. She experienced suicidal thoughts. She showed difficulty performing simple math problems and demonstrated limited abstract thinking. Dr. Mynatt believed Claimant's depression may have an adverse affect upon her judgment and cognitive functions. (Tr. 225). Dr. Mynatt diagnosed Claimant with major depression, recurrent, and he noted the possibility of PTSD due to childhood rape. She had a global assessment of functioning (GAF) of 50. (Tr. 226). Dr. Mynatt determined Claimant's impairments met Listing 12.04 for affective disorders. (Tr. 228).

Dr. Mynatt examined Claimant again in March of 2003 but gave no indication in his report that he was aware he had examined her in 1992. (Tr. 254-255). Dr. Mynatt found Claimant experienced frequent nightmares as a result of the sexual molestation by her father. She suffered anxiety and anti-social behavior. She heard her father's voice call her name. (Tr. 254). Dr. Mynatt diagnosed Claimant with PTSD and a panic disorder with agoraphobia. (Tr. 255). He again found Claimant had a GAF of 50. Id. Dr. Mynatt found Claimant had "moderate" impairments in activities of daily living, social functioning and concentration, persistence or pace.

(Tr. 267). "Marked limitations" were noted in the areas of performance of detailed tasks and the ability to interact with the public. Based upon these findings, Dr. Mynatt found Claimant had made improvement since 1993. (Tr. 275). As a result, Claimant's benefits were terminated. (Tr. 37).

An additional consultative mental evaluation was conducted by Kathleen Ward, Ph.D. on July 10, 2004. (Tr. 312-315). She diagnosed Claimant with Personality Disorder, NOS. (Tr. 315).

Claimant was notified of the termination of benefits on July 28, 2003 or soon thereafter. The form letter sent to Claimant explains, "[y]ou have 60 days to appeal. The 60 days start the day after you get this letter. You will need a good reason for waiting more than 60 days. You have to ask for an appeal in writing. Come to one of our offices if you want help." (Tr. 37-38). Acting *pro se*, Claimant did not appeal the termination of benefits within the 60 day period. On November 7, 2003, Claimant contacted Defendant as referenced on the records of the Social Security Administration. The agency referenced the recent cessation of benefits on this form. (Tr. 82). Thereafter, Claimant submitted the SSI application. On the form, Claimant noted her date of impairment as October of 1992, the original date she was found to be disabled. (Tr. 83). Defendant treated the submission as a new request for benefits rather than an appeal of the cessation of the previously awarded benefits.

In his decision, the ALJ recognized the cessation of benefits on July 28, 2003. He further found Claimant had not appealed the decision, making it final. He determined "[t]he record provides no good reason to reopen said July 28, 2003 initial cessation determination." (Tr. 23). As a result, all evidence pre-dating the November 7, 2003 submission date was considered "only in an historical context." Id.

The circumstances which will be considered "good cause" for missing a deadline to request review in a social security case are set forth in 20 C.F.R. § 416.1411. The interpretive rules governing this determination include a consideration for mental impairments. Soc. Sec. R. 91-5p states, in pertinent part:

> POLICY INTERPRETATION: It has always been SSA policy that failure to meet the time limits for requesting review is not automatic grounds for dismissing the appeal and that proper consideration will be given to a claimant who presents evidence that mental incapacity may have prevented him or her from understanding the review process.
>
> When a claimant presents evidence that mental incapacity prevented him or her from timely requesting review of an adverse determination, decision, dismissal, or review by a Federal district court, and the claimant had no one legally responsible for prosecuting the claim (e.g., a parent of a claimant who is a minor, legal guardian, attorney, or other legal representative) at the time of the prior administrative action, SSA will determine whether or not good cause exists for extending the time to request review. If the claimant satisfies the substantive criteria, the time limits in the reopening regulations do not apply; so that, regardless of how much time has passed since the prior administrative action, the claimant can establish good cause for extending the deadline to request review of that action.
>
> The claimant will have established mental incapacity for

the purpose of establishing good cause when the evidence establishes that he or she lacked the mental capacity to understand the procedures for requesting review.

In determining whether a claimant lacked the mental capacity to understand the procedures for requesting review, the adjudicator must consider the following factors as they existed at the time of the prior administrative action:
-inability to read or write;
-lack of facility with the English language;
-*limited education;*
-*any mental or physical condition which limits the claimant's ability to do things for him/herself.*

If the claimant is unrepresented and has one of the factors listed above, the adjudicator will assist the claimant in obtaining any relevant evidence. The decision as to what constitutes mental incapacity must be based on all the pertinent facts in a particular case. *The adjudicator will resolve any reasonable doubt in favor of the claimant.*

If the adjudicator determines good cause exists, he or she will extend the time for requesting review and take the action which would have been appropriate had the claimant filed a timely request for review. A finding of good cause will result either in a determination or decision that is subject to further administrative or judicial review of the claim, or a dismissal (for a reason other than late filing) of the request for review, as appropriate.

1991 WL 208067, 2 (emphasis added by this Court).

Claimant without question (1) acted *pro se* at all times relevant around the deadline to appeal; (2) had limited education; and (3) suffered from mental and emotional limitations. The missing element in the ALJ's decision is a finding of whether Claimant had good cause for not submitting a timely appeal or whether she believed she was submitting an appeal of the cessation of benefits when she submitted her application on November 7, 1993.

9

Given the admonition in the regulations that doubts be resolved in favor of the claimant, an express examination of the elements which might justify a good cause findings must be made by Defendant prior to barring an appeal of the cessation. No such examination or finding has been made thus far. As a result, this case shall be remanded for that express determination.

The remaining issues raised by Claimant would be significantly affected by the allowance of the appeal of the cessation of benefits. As a result, until that determination is made, these additional issues will not be addressed by this Court.

## Conclusion

A determination as to whether good cause exists to permit Claimant to appeal the cessation of her previously awarded benefits must be accomplished prior to an examination of this review on the merits. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED** and this case should be **REMANDED** for Defendant to make the good cause determination.

The parties are herewith given ten (10) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to this Report and Recommendation within ten (10) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 8th day of November, 2007.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE